**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHER DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN P. MEDGYESY, individually and in his capacity as trustee for JPM FAMILY TRUSTS, | ) ) ) ) | |
| Plaintiff, | ) ) ) | Case No. 12 C 9708 |
| v. | ) ) | |
| ERMA S. MEDGYESY, individually and in her capacity as co-trustee of the LSM Children Trust, et al., | ) ) ) ) | Magistrate Judge Cole |
| Defendant. | ) | |

## AMENDED MEMORANDUM OPINION AND ORDER

**A.**

Attorney Nicola Tancredi represents the plaintiffs in this matter. The defendants have come forward with evidence in the form of several emails from Mr. Tancredi that they claim shows he formerly provided legal services for the defendants in a related case. The defendants now ask that he be disqualified from representing the plaintiffs.[1]

This case is a family squabble – apparently a bitter one involving the Oscar Mayer heirs – over the distribution of assets from a number of commingled trusts. On the one side, there is the plaintiff, John P. Medgyesy, acting as trustee for the "family trusts"; on the other side there is the

---

[1] Although neither side raises the issue, the threshold question involves the extent of my authority to resolve this motion. That is, is this a motion that I can "hear and determine" under 28 U.S.C. §636(b)(1)(A) and Rule 72(a), or am I limited to issuing a Report and Recommendation under §636(b)(1)(B) and Rule 72(b)? On the issue generally of what constitutes each kind of matter, *see Cleversafe, Inc. v. Amplidata, Inc.*, 287 F.R.D. 424 (N.D.Ill. 2012). The cases are uniform in holding that a motion to disqualify counsel is a nondispositive matter. *See Hutchinson v. Pfeil*, 105 F.3d 562, 565 (10th Cir. 1997); *Fish v. Hennessy,* 2012 WL 3643829, 1 (N.D.Ill. 2012); *Advanced Mfg. Technologies, Inc. v. Motorola, Inc.*, 2002 WL 1446953 (D. Ariz. 2002); *Affeldt v. Carr*, 628 F. Supp. 1097, 1101 (N.D. Ohio 1985).

defendant, Erma Medgyesy, acting as trustee for the "LSM Children Trust." Mr. Tancredi, along with Giovanni Cicione, is currently representing the plaintiff. On March 8, 2013, the attorneys for both sides received a letter from another lawyer, Christopher Sheean, informing them that Mr. Tancredi had been engaged on behalf of both John P. and Erma Medgyesy – as well as other defendants here, including Laura Medgyesy and Laszlo S. Medgyesy – in a prior case regarding the trusts. Mr. Sheean included several pieces of correspondence he had received "from Mr. Tancredi during the time that he was engaged by [Mr. Sheean's] firm in this matter . . . ." (*Plaintiff's Exs.*, Dkt. # 31-1, page 2).

The correspondence consists of a number of Mr. Tancredi's own emails on which appear the familiar legend, "Attorney work product" and some of which bore the email address of Mr. Tancredi's law office: "From: Nicola S. Tancredi <ntancredilaw@gmail.com>". (*Plaintiff's Exs.*, Dkt. # 31-1, page 3, 6, 12, 13). One email indicated Mr. Tancredi wanted to review the pleadings in the case and discuss strategy. In it, he recommended removal of the trustee "given [his] multiple breaches of fiduciary duty." (*Plaintiff's Exs.*, Dkt. # 31-1, page 4). Another set up a meeting to discuss a plan about going forward with the case. (*Plaintiff's Exs.*, Dkt. # 31-1, page 5). In another, after Mr. Tancredi expressed eagerness to become involved in the case:

> There are some aspects that might be potentially worthwhile from a practice area expertise standpoint in seeing how this case plays out. I am open to investing a certain amount of time for the value of seeing how the case plays out. . . . *Like a surgeon who hears of an interesting operation, I would at least like a window into this one.*

(*Plaintiff's Exs.*, Dkt. # 31-1, page 12)(Emphasis supplied). The email is signed "Best regards, Law Offices of Nicola S. Tancredi." It, like every other email from Mr. Tancredi, was designated "Attorney work product."

In a curious bit of lawyering, the plaintiff first moves to strike the defendant's motion to disqualify because it is not supported by competent evidence. That argument is mystifying since Mr. Tancredi's own affidavit attached to the motion to strike admits that he sent the emails while he was working with Mr. Sheean's firm on the earlier Medgyesy trust case. (*Defendant's Ex.*, Tancredi Aff., ¶ 8). Mr. Tancredi's affidavit authenticates the emails and makes them competent evidence even at a trial. *See* Rule 901(b)(1), Federal Rules of Evidence. The plaintiff's fallback position is that, although Mr. Tancredi worked on the case with Mr. Sheean, he did so in his capacity as a fraud examiner, asset locator, and management consultant – not as an attorney. (Tancredi Aff., ¶ 6).

There are two glaring flaws in the contention. First, if he was not acting as an attorney, why designate every communication "attorney work product," and why use his attorney email address. There is no explanation for the designation, and the claim that the multiple uses of his law office email address were "inadvertent ministerial administrative errors" is conclusory, and I need not accept it. (Tancredi Aff., ¶8). Mr. Tancredi makes no attempt to explain who made the supposed errors or how they were made. He does not say who authored the emails, and he does not claim that he was not the author. And if, as it seems, he was the author, his claim of inadvertent administrative errors is implausible.

Second, there is no principled argument as to why the admitted disclosure to him by Mr. Sheean regarding the "contents of the database" – which included "financial and transactional records concerning various Medgyesey family trusts" (Tancredi Aff., ¶6) – ought not preclude his current representation. He does not explain why he ought to be allowed to continue in a position where there is at least an appearance that he could use what he learned against those who reposed

3

trust in him in the belief that whatever he saw or learned would be maintained in confidence.
.

It is a curious argument that if one obtains access to confidential information, he is free thereafter to use it against the person from whom he learned it simply because he was not then but will now be acting as a lawyer..[2]

Mr. Tancredi's argument seeks to avoid this pitfall by contending that while he knows that he was briefed on how to operate the trust database, he cannot recall whether he actually examined the data base or any confidential information. (Tancredi Aff., ¶6). But that claim is not persuasive. Mr. Tancredi's own emails reflect his eagerness to be involved in the case, and given that eagerness coupled with the various recommendations he actually made, such as that the trustee be immediately removed "given [what Mr. Tancredi concluded were] multiple breaches of fiduciary duty," it is a reasonable, if not ineluctable inference, that he accessed the database and utilized its confidential contents, which he admits included "financial and transactional records concerning various Medgyesey family trusts." (Tancredi Aff., ¶6). Mr. Tancredi makes no claim that the "financial and transactional records" of the trusts in the database were not confidential. Obviously, they are.

**B.**

Considering whether to disqualify an attorney presents a difficult balancing act. On the one hand, there is prerogative of a party to proceed with counsel of his choice. *Owen v. Wangerin*, 985 F.2d 312, 317 (7th Cir. 1993); *Schiessle v. Stephens,* 717 F.2d 417, 419-20 (7th Cir.1983). On the other, there is the court's duty "to safeguard the sacrosanct privacy of the attorney-client

---

[2] Even if it were conceded that Mr. Tancredi was not a lawyer, he would still be barred under familiar and basic principles of the law of Agency from representing the plaintiffs in this case.

relationship," *Cromley v. Board of Educ. of Lockport Tp. High School Dist. 205*, 17 F.3d 1059, 1066 (7th Cir. 1994), and the transcendent goal of maintaining the public trust in the propriety of legal proceedings.

"Where an attorney represents a party in a matter in which the adverse party is that attorney's former client, the attorney will be disqualified if the subject matter of the two representations are 'substantially related.'" *Westinghouse Elec. Corp. v. Gulf Oil. Corp.,* 588 F.2d 221, 223 (7th Cir.1978). First, however, the question is whether there was an attorney-client relationship at all – a relationship Mr. Tancredi denies. But the emails show that that denial is not credible. For example, on January 7, 2009 after recommending the removal of the trustee, Mr. Tancredi explains the legal consequences and advantages of the removal of the trustee and opines that a petition for immediate removal of the trustee is appropriate "to protect further injury to beneficiary assets."

Next, it must be determined whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters. Third, it must be determined whether that information is relevant to the issues raised in the litigation pending against the former client. *LaSalle Nat. Bank v. Lake County*, 703 F.2d 252, 255-56 (7th Cir. 1983).

The emails show that Mr. Tancredi was brought in to assist Mr. Sheean on the previous Medgyesy trust case. They show that he was involved in the analysis of legal questions like fraud and breach of fiduciary duty, and was a party to discussions regarding litigation strategy. There may have been no *formalized* attorney-client relationship, but there doesn't have to be. *See Westinghouse Elec. Corp. v. Kerr–McGee Corp.,* 580 F.2d 1311, 1319–20 (7th Cir.1978); *Herbes v. Graham*, 180 Ill.App.3d 692, 699, 536 N.E.2d 164, 167 (2nd Dist. 1989). What the emails show is that Mr. Tancredi was doing work that he, himself, deemed legal, as evidenced by his use of the "attorney

5

work product" label on his emails.

Further, it is reasonable to infer that he had access to confidential information. He said he reviewed documents, which were clearly confidential, and the evidence taken as a whole shows that he had access to the confidential information in the database. Whether he accessed it really does not matter. It is the access that counts. *See infra* at 8.

Information regarding the family trusts – the subject matter of the prior case – is clearly relevant to this case. The defendant does not suggest that it isn't or that the matters are not substantially related. As such, the defendant doesn't even have to show that Mr. Tancredi's received confidential information. *LaSalle Nat. Bank v. Lake County*, 703 F.2d 252, 255 (7th Cir. 1983). *See infra* at 8.

This situation, at the very least, gives the appearance of impropriety, and an attorney may be disqualified for the appearance of impropriety. *Cromley*, 17 F.3d at 1066. In order to disqualify an attorney on the basis of an appearance of impropriety, the movant need not prove actual wrongdoing, but must prove that (1) there exists a reasonable possibility that some specifically identifiable impropriety did, in fact, occur, and (2) the likelihood of public suspicion or obloquy outweighs the social interests that will be served by the attorney's continued participation in the case. *United States v. Gayle,* 406 Fed.Appx. 352, 364 (11th Cir. 2010).

Allowing Mr. Tancredi to participate further in this case would result in an appearance of impropriety. If Mr. Tancredi were, indeed, acting not as a lawyer but as a fraud specialist or in some other capacity as he claims, he certainly created a very different impression. Sending emails from his law office address and labeling them attorney work product – which he does not explain at all – not only undermine his characterization of the work he did as non-legal, but created precisely the

6

opposite impression than the one he now claims reflects reality. To allow him to continue in the face of this evidence would be to excuse the rather obvious appearance of impropriety.

C.

The plaintiff also argues that the defendant has waived any objection to Mr. Tancredi's participation in this case by waiting too long to act. According to Mr. Tancredi, he informed defense counsel on January 4, 2013, that he had what he tendentiously described as a preliminary discussion about working for Mr. Sheean as a fraud examiner in the previous case. (Tancredi Aff., ¶ 11). Citing several cases that state that waiting between six and a half months to two years is too long, the plaintiff points out that the defendant filed the motion to disqualify on March 14, 2013. That's a bit more than nine weeks – not six and a half months and certainly not two years. Moreover, defendant's counsel affirms that Mr. Tancredi actually informed him of his involvement with the previous case around February 25th. (Blonder Aff., ¶¶ 3-4). And, defendant's counsel did not learn of the full extent of Mr. Tancredi's involvement until Mr. Sheean sent his letter and accompanying emails. Mr. Tancredi had withheld from his explanation of events the fact that he had discussions about strategy and/or reviewed documents. That involvement went beyond what could be characterized as the "preliminary discussions" he revealed to defendant's counsel. There can be no waiver found here. The same goes for the plaintiff's estoppel argument. There was no unreasonable delay here and no prejudice resulting from reasonable reliance on claimed inaction by the defendant. Once defendant's counsel had the necessary information, he acted in a timely manner.

D.

Regrettably, disqualification motions have become common tools in litigation, often being used for purely strategic purposes and to harass. *See Richardson-Merrell, Inc. v. Koller,* 472 U.S.

424, 436 (1985); *Freeman v. Chi. Musical Instrument Co.,* 689 F.2d 715, 722 (7th Cir.1982); *Allegaert v. Perot*, 565 F.2d 246, 251 (2d Cir. 1977); *Woods v. Covington County Bank,* 537 F.2d 804, 813 (5th Cir. 1976). Thus, motions for disqualification are not favored and should not be casually granted. *Melamed v. ITT Cont'l Baking Co.*, 592 F.2d 290, 295 (6th Cir. 1979); *Fred Weber, Inc. v. Shell Oil Co.*, 566 F.2d 602, 609 (8th Cir.), *cert. denied*, 436 U.S. 905 (1977); *Panduit Corp. v. All States Plastic MFG. Co.*, 744 F.2d 1564, 1576-77 (Fed. Cir. 1984).

But the evidence in this case shows that this is not a motion designed to harass or to gain a tactical advantage. Rather, there is just too much that isn't right and doesn't look right. The technical prerequisites for the motion have been satisfied. First, the cases are clearly related. Second, the evidence shows that Mr. Tancredi had access to confidential information. He reviewed documents and had every incentive to go into the database that housed very significant and confidential information. Indeed, Mr. Tancredi, in his affidavit, offers no explanation for how he could have concluded that there were "multiple breaches of fiduciary duty" by the trustee if he did not have access to confidential information.

Indeed, he concluded that the breaches were so obvious and numerous that "immediatel removal [of the trustee] should be easy." This recommendation could not have been made responsibly without that access to the very confidential information he now claims he does not know whether he saw or not. And finally, that claim of lack of recall is unpersuasive since the event occurred not long, long ago, but within the past three years.

In any event, as noted earlier, once a substantial relationship is found, it is irrebutably presumed that the individual had access to confidential information, and that mandates disqualification. *See NovoTerapeutisk Laboratorium A/S v. Baxter Travenol Laboratories, Inc.*, 607

F.2d 186, 192 (7th Cir. 1979); *Exterior Systems, Inc. v. Noble Composites, Inc.*, 175 F.Supp.2d 1112, 1116 (N.D.Ind.2001).[3]

Mr. Tancredi insists he wasn't acting as an attorney, but he was certainly discussing legal matters according to his emails; those emails came from his law office and bore the statement "Attorney work product." He says the law office address on the emails was a mistake, but he was the author of the emails, and he has no explanation (reasonable or otherwise) for why he would characterize his communication as attorney work product if they were not, and if he thought he was not acting as an attorney. Finally, when he informed defendant's counsel about his involvement in the previous case, his explanation was under-inclusive.[4] In light of the evidence, disqualification is appropriate. Disqualification will ensure not only the reality but the appearance of propriety, maintenance of the public trust, and safeguard the privacy of the attorney-client relationship.

**D.**

Moreover, although plaintiff complains that he will be prejudiced by having to hire new counsel, he does not say how. He has another attorney from another law firm. This case has barely gotten started. It has bounced from Massachusetts state court, to federal court in Massachusetts, to this court in December 2012. Mr. Tancredi only came aboard in January. The only substantive filing from the plaintiff has been an answer to the defendant's counterclaim. Other than that, all the plaintiff has done is file motions for extensions of time. Discovery began a month ago. Mr. Tancredi's disqualification will not prejudice the plaintiff.

---

[3] Illinois law with respect to ethical matters now govern in this court. *Tomasian v. CD Peacock, Inc.,* 2012 WL 2590493, 12 (N.D.Ill. 2012).

[4] According to his own affidavit, Mr. Tancredi gave no indication that he reviewed documents or discussed strategy.

9

## CONCLUSION

Defendant's Motion to Disqualify Plaintiff's attorney [31] is granted.

ENTERED: *Jeffrey Cole*
UNITED STATES MAGISTRATE JUDGE

DATE: 6/17/13